THE CITY OF NEW YORK, Respondent, *v.* WILLIAM P. BAIRD et al., Appellants.

PRINCIPAL AND SURETY — IMPAIRMENT OF INDEMNITORS' RIGHTS — QUESTION OF FACT. In an action upon a bond given to the city of New York as a substitute for moneys retained by the comptroller under a contract for laying water mains, to meet claims for damages which might arise from the negligence of the contractor, it appeared that a judgment based upon his negligence had been obtained against the city and the contractor; that both appealed; that thereafter the city, against his protest, settled by paying less than the amount of the judgment, but left it intact as to him, of all of which the surety had no notice, nor was it given an opportunity to say whether it would further indemnify the city on the condition that it would either prosecute the appeal or permit the surety to do so; that the reason given for the city's action was that while counsel believed there might be a reversal, he believed there would be another recovery in as great if not greater amount, and he deemed it wise to secure a reduction as the bond secured less than half of the amount of the judgment. It also appeared that after the settlement the city brought an action on a bond executed by the contractor at the time of the contract and conditioned for its faithful performance in which it sought to recover the full amount paid in settlement of the judgment, which action was still pending. *Held,* that it was a question of fact, 1, whether or not the settlement was made in bad faith. 2. If so made, did it operate to the injury of the principal and surety? If made in bad faith with the intention of injuring the principal and surety, the plaintiff cannot recover unless it shows that its action did not operate to the disadvantage of either, or if it did to some extent, that, after deducting the amount of damage done to them, there still remained something due on the bond. A judgment of the Appellate Division, therefore, which reverses an order setting aside a verdict directed in plaintiff's favor and restores the original judgment entered thereon must be reversed and a new trial granted in order that the defendants may have an opportunity of presenting these questions to a jury.

*City of New York* v. *Baird,* 74 App. Div. 238, reversed.

(Argued June 18, 1903; decided October 20, 1903.)

APPEAL from a judgment, entered August 5, 1902, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed an order of the court at a Trial Term setting aside a verdict in favor of plaintiff and granting a new trial, and directed judgment for plaintiff upon the verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. Woolsey Shepard* and *Joseph McElroy, Jr.,* for appellants. The stipulation to pay and satisfy any judgment contained in the condition of the bond of indemnity means (1) a valid judgment and (2) a final judgment in the Court of Appeals, and is not restricted to a judgment of the trial court. (*Wheeler* v. *Sweet,* 137 N. Y. 435; *Foo Long* v. *A. S. Co.,* 146 N. Y. 251; *Aeschlimann* v. *Presbyterian Hospital,* 165 N. Y. 296; *Kirby* v. *D. & H. C. Co.,* 90 Hun, 588; *Roberts* v. *Johnson,* 58 N. Y. 613; *Kane* v. *Smith,* 80 N. Y. 458; *Beal* v. *Finch,* 11 N. Y. 128; *Robinson* v. *Plimpton,* 25 N. Y. 484; *Travers* v. *Nichols,* 7 Wend. 434.) The right of appeal is a constitutional right which cannot be waived except by express stipulation and in unambiguous terms. The stipulation in the condition of the bond given by Baird and the surety company contains no such waiver and its terms cannot be so construed. (*Stedeker* v. *Bernard,* 93 N. Y. 589.) If there was a breach in the condition of the bond immediately upon the entry of the Kelly judgment, and an accrual of liability in favor of respondent against appellants, the breach was waived by the taking of an appeal by respondent and the liability of appellants was postponed and the contract of indemnity modified to such extent until the determination of said appeal. (*Toplitz* v. *Bauer,* 161 N. Y. 325; *Thompson* v. *Poor,* 147 N. Y. 402; *Gray* v. *Green,* 9 Hun, 334; *Dodge* v. *Zimmer,* 110 N. Y. 43; *Nicoll* v. *Sands,* 131 N. Y. 19; *Woolsey* v. *Funke,* 121 N. Y. 87; *Sattler* v. *Hallock,* 160 N. Y. 291; *G. F. P. C. Co.* v. *T. Ins. Co.,* 162 N. Y. 399.) The intention of Baird and the surety company, when the

bond was given, determines the extent of their obligation and is to be ascertained from the meaning of the language used in the bond itself, read ·in the light of the circumstances surrounding its execution. (*U. C. S. Inst.* v. *Young*, 161 N. Y. 23; *Nat. M. B. Assn.* v. *Conkling*, 90 N. Y. 116; *Smith* v. *Molleson*, 148 N. Y. 241; *Tilden* v. *Tilden*, 8 App. Div. 99; *Griffiths* v. *Hardenbergh*, 41 N. Y. 464; *White's Bank* v. *Myles*, 73 N. Y. 336; *French* v. *Carhart*, 1 N. Y. 102; *Coleman* v. *Beach*, 97 N. Y. 545; *Bennett* v. *Edison*, 26 App. Div. 363; *Blossom* v. *Griffin*, 13 N. Y. 569.) The contract of Baird and the surety company with the city of New York, as embodied in the bond, is one of suretyship, and is to be interpreted by the ordinary rules of construction governing such contracts, namely, strictly in accordance with its terms.   The compromise of the Kelly judgment by the city, without notice to the surety company, and against the protest of the defendant Baird, so altered and changed their position and so affected and prejudiced their legal rights and status as to constitute a breach of the contract on the part of the city of New York and to release the surety company and Baird from their liability on the bond. (*Page* v. *Kreky*, 137 N. Y. 307; *Smith* v. *Molleson*, 148 N. Y. 241; *Phelps* v. *Borland*, 103 N. Y. 406; *J. C. Bank* v. *Streader*, 106 N. Y. 186; *Lynch* v. *Reynolds*, 16 Johns. 41; *Brown* v. *Williams*, 4 Wend. 360; *Wheeler* v. *Sweet*, 137 N. Y. 435; *Acer* v. *Hotchkiss*, 97 N. Y. 396; *Foo Long* v. *A. S. Co.*, 146 N. Y. 254; *Ballman* v. *A. S. Co.*, 104 Fed. Repr. 634.)   Respondent was entitled on the trial to have the question submitted to the jury, whether the settlement and compromise made by the city was made in good faith and whether same was not a constructive fraud on the rights of respondent. (*Foo Long* v. *A. S. Co.*, 146 N. Y. 251; *Wheeler* v. *Sweet*, 137 N. Y. 435; *A. S. Co.* v. *Ballman*, 104 Fed. Repr. 634; *Easton* v. *Lyman*, 26 Wis. 61; *Stark* v. *Fuller*, 42 Penn. St. 320; *Knapp* v. *Smith*, 27 N. Y. 277; *Wakeman* v. *Daily*, 44 Barb. 498; 51 N. Y. 27: *Aeschlimann* v. *Presby. Hospital*, 165 N. Y. 296.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondent. By the express terms of the bond the defendants were in default upon the entry of the judgment obtained by Thomas Kelly against the plaintiff. It makes no difference, therefore, so far as their liability is concerned, whether or not the plaintiff appealed or settled said judgment without their consent. (*Conner* v. *Reeves,* 103 N. Y. 527; *M. S. Bank* v. *Thomson,* 58 Minn. 346; *Brown & Haywood Co.* v. *Legon,* 92 Fed. Repr. 851; *Challoner* v. *Walker,* 1 Burr. 574; *Sparkes* v. *Martindale,* 8 East, 593; *Hancock* v. *Clay,* 2 Stark. 100; *Wheeler* v. *Sweet,* 137 N. Y. 435; *Given* v. *Driggs,* 1 Caines, 450; *Lee* v. *Clark,* 1 Hill, 56; *Creamer* v. *Stephenson,* 15 Md. 211.) The fact that there is an indemity bond attached to the contract does not affect the question of the liability of the defendants. (*A. S. Co.* v. *Thurber,* 121 N. Y. 655; *Sachs* v. *Am. Surety Co.,* 72 App. Div. 60; *U. C. S. Inst.* v. *Young,* 161 N. Y. 23.)

Parker, Ch. J. The recovery is on a bond given by defendants as principal and surety conditioned for the payment and satisfaction of any judgment which may be obtained in an action brought by one Kelly against the city of New York.

Defendants insist that the recovery ought not to stand because (1) as to defendant Baird the city, without right, made a settlement with Kelly and caused the judgment to be satisfied as to it against the protest of Baird, who insisted that an appeal taken by the city and himself was well taken, and should be prosecuted to the end; and (2) as to the surety company, that it was entitled to notice of the settlement and the consequent opportunity to take the city's place and prosecute the appeal.

The execution and delivery of the bond upon which this action is founded was induced by these circumstances: Baird had a contract with the city of New York for laying water mains, one of the provisions of which was that he would indemnify and save harmless the city of New York against

and from all suits and actions and all costs and damages to which the city might be put for, or on account of any injury, or alleged injury, to the person or property of another resulting from negligence in the performance of the work or in guarding the same.   During the progress of the work Kelly, a member of the fire department, drove his engine into some part of the excavation.   It was in the night time and he claimed there were no lights to warn him of the danger.   His injuries were very serious and very promptly he commenced an action against the contractor, Baird, and the city of New York, the liability of the latter resting upon its duty to keep the public highway in a safe condition for travel while the work was in progress, and its failure to guard the street and ditch. (*Deming* v. *Terminal Ry. of Buffalo,* 169 N. Y. 1.)   Before that action came on for trial Baird, having completed his contract, sought to obtain from the comptroller the balance of the contract price, which exceeded the sum of $25,000.   But the comptroller claiming, as he lawfully might, that the provisions in the contract to which brief reference has been made enured to the benefit of the city, and entitled it to retain sufficient of the moneys due the contractor to indemnify it against any claim made against it by reason of the contractor's negligence (*Mansfield* v. *Mayor, etc., of N. Y.,* 165 N. Y. 208), refused to pay over such balance.   Negotiations on this subject resulted in a consent by the municipal authorities to accept a bond with a surety company as surety for $10,000 conditioned, as has already been noted, for the payment of any judgment to be obtained in the action, upon the giving of which the municipal authorities paid over the $25,000 to Baird.

The trial of Kelly's action, however, disclosed that the jury took a very different view of the extent of the injuries received by Kelly from that taken by Baird and the representatives of the municipality, for their verdict exceeded $22,000.

After the entry of judgment an appeal was taken by Baird and the city.   Some months later, and while the appeals were pending undisposed of, the city made a settlement with Kelly by which it secured a reduction of the judgment as against it

18

by something more than $5,000. The city having paid $7,500 in excess of the amount secured by the bond then brought this action.

Baird and his surety insist that the city having taken an appeal was bound to prosecute it to the end, although the result to the city might be a very substantial loss, while the view of the city authorities seems to be that the city owed no duty whatever either to the principal or his surety in the bond and, therefore, could accept as final any judgment rendered in that action no matter how excessive the damages or how many the substantial errors of law committed by the trial court. But the view-point of each is partial and quite too narrow we think, and for that reason, doubtless, is unsupported by authority.

In *Conner* v. *Reeves* (103 N. Y. 527) the question was neither presented by the record nor discussed by the counsel or the court whether an indemnity can be availed of by one depriving the indemnitor of such rights of appeal as the statute undertakes to secure to all litigants. Nor was such a question presented in *Wheeler* v. *Sweet* (137 N. Y. 435), although a very interesting question was decided, namely, that while a judgment against a sheriff obtained in due course ordinarily fixes the liability of the indemnitors, although not parties and without notice of the action, at the same time good faith requires the sheriff, if requested, to give the indemnitors an opportunity to present a defense, and if this is refused, or prevented by his act, he may not say that the indemnitors have not been injured or that the judgment determines their liability. The proposition decided was no more to be found in that bond than in this one, but it was read into it by the court, and furnished a precedent of which many more could be found for a like reading in this case if justice will be thereby promoted.

The excuse offered by the city authorities for changing their position after taking an appeal is that Kelly's counsel came to them with an offer of compromise, and while the learned assistant corporation counsel was of the opinion that a

reversal would quite likely result from the appeal, his view was that the reversal would be on technical grounds which would not at all stand in the way of a submission of the case to a jury on a new trial, and it was his judgment that as large and possibly a larger verdict would result. Therefore, he deemed it his duty in behalf of the city to secure a settlement which would reduce the amount to be paid as much as possible, and he secured a settlement by the terms of which the city paid something like $5,000 less than the amount of the judgment against it.

This $5,000 reduction did not, however, benefit Baird. The city took care of itself and let Baird go, although the record tends to show that not only did the city have this $10,000 bond, but it also had a bond given by Baird when he entered into the contract, which covenanted for faithful performance of all the conditions of the contract, and against the sureties upon that bond it seems the city has also proceeded. If that bond is good — and the record contains no hint to the contrary — the reason assigned by counsel for securing a reduction of the judgment so far as the city is concerned seems inadequate and it becomes very difficult, therefore, to understand why it was insisted that the city should settle against the protest of Baird, who asserted persistently his anxiety to have the judgment reviewed by the appellate court. Baird's counsel says under oath that he protested against it with all possible vigor, and in that respect he is not contradicted by the assistant corporation counsel, who seems to have been equally determined that so far as the city was concerned the judgment should be compromised.

We have then a situation where after consultation between the counsel for Baird and the representative of the corporation counsel an appeal was taken to the Appellate Division by the city and Baird, and steps taken toward making a case; but before it was possible for it to be argued the municipal authorities changed their position and settled the judgment.

It would be strange indeed if as a result of such action the city of New York could recover on the bond should the con-

tinuance of the appeal by Baird result in a reversal of the judgment without possibility of a recovery against him on a new trial. And on the other hand it would equally offend against justice to deprive the municipality of the benefit of the wisdom of its officers should it happen that they were wise in concluding either that the judgment would not be reversed or, if reversed, that it would be for technical reasons, with the result that the subsequent verdict would be for an equal or greater amount.

Our conclusion is that — reading this bond, as we should, in the light of the circumstances surrounding its execution, and the contract under which the money was being held by the comptroller, for which this bond was to become a substitute, for the protection of the city — the city could not deprive the principal and his sureties of his right of review without taking the chances of loss should such review and a subsequent trial had by reason of it result favorably to the principal; that midway between the two extremes claimed by plaintiff and defendants lies the true position, and the test of it is, Was the action of the municipal authorities complained of taken in bad faith? If so, did it operate to the substantial injury of Baird and the surety? If the first question be answered in the affirmative then the party indemnified cannot recover unless it shows that its action — found by the jury to have been taken in bad faith with the intention of injuring the principal or surety — did not operate to the disadvantage of either, or if it did to some extent, that after deducting the amount of damage done to them there still remained something due on the bond.

The defendants asked to go to the jury upon a number of questions, among others as to whether the settlement of the suit of *Kelly* v. *Mayor*, was or was not made in bad faith and collusively and without respecting the rights of the indemnitors. The court denied defendants' application and directed a verdict in favor of plaintiff, which he afterwards set aside. The judgment of the Appellate Division sets aside the order of vacatur and restores the original judgment, thus

depriving defendants of the opportunity of having the question of good faith and fair dealing on the part of the municipal authorities passed upon, and if this be error then this court should reverse the Appellate Division that defendants may have a chance to ask a jury to pass upon this question of fact.

And it is error if there was evidence sufficient to make it a question for the jury, and it seems to us that there is no room for doubt on that subject.

When this defendant company was invited to become surety on Baird's bond, the action of Kelly against the city was pending, and the municipal authorities, as well as Baird and the surety company, well knew that if a substantial judgment should be obtained by the plaintiff there would be an appeal. Upon the trial the learned assistant to the corporation counsel took part, and after the trial had a consultation with the counsel for Baird, during which he denounced the verdict as outrageous, and expressed the opinion, as he admits, that a new trial could probably be obtained. He served a notice of appeal and ordered the stenographer's minutes, after which he entertained the overtures for a settlement made by plaintiff's counsel, and insisted that Baird should join with him, and when Baird's counsel said his client would not do it, but would "fight to the finish," the city settled by paying $5,000 less than the judgment, but left the judgment intact as against Baird. And of all this the surety was not advised, and it was not given an opportunity to say whether it would further indemnify the city on the condition that the city would either prosecute the appeal or permit the surety to do so. And the only excuse suggested for its action is that, while counsel thought that there might be a reversal, he believed there would be another recovery in as great and, perhaps, greater amount, and, therefore, he deemed it wise for the city to secure a reduction of $5,000, inasmuch as the bond of defendants amounted to but $10,000. But after this settlement the city brought an action on the bond executed at the time of the making of the contract, and conditioned for the faithful

performance of all its covenants, in which it sought to recover the full amount of $17,500 paid in settlement of the judgment. That action was pending at the time of the trial of this one, and, with the other evidence adduced on that subject, tended strongly to show that the officers of the city were not called upon to take the position they did and settle the judgment against the earnest protest of Baird, for it was amply protected in any event.

These prominent facts, together with other facts and circumstances presented by the record, should, we think, have gone to the jury so that it might pass upon the good faith of the city's action, upon the same principle as that underlying the case of *Wheeler* v. *Sweet* (*supra*).

The judgment should be reversed and a new trial granted, with costs to abide the event.

HAIGHT, VANN, CULLEN and WERNER, JJ., concur; GRAY and MARTIN, JJ., absent.

Judgment reversed, etc.